UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN M.,

        Plaintiff,

        v.                                      **DECISION AND ORDER**

                                                            23-CV-1026S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff John M.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his applications with the Social Security Administration on February 26, 2018.  He initially alleged disability beginning February 13, 2018, due to liver disease (cirrhosis), audiologic hearing loss, chronic skin problems, obesity, anxiety, depression, and alcohol use disorder.  Plaintiff's applications were denied and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On January 23, 2020, ALJ B. Hannan commenced a video hearing, at which Plaintiff represented by a non-attorney representative and Vocational Expert appeared

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

and testified. (R.² at 28-52.) Plaintiff was 54 years old on the onset date with a limited education and worked as a glazier. (R. at 1236; see R. at 21, 1283.)

4. The ALJ considered the case *de novo* and, on March 5, 2020, issued a written decision denying Plaintiff's applications for benefits. (R. at 12; see also R. at 1274.) After the Appeals Council denied his request to review this decision, Plaintiff filed an action challenging the Commissioner's decision. (R. at 1, 1290.) There, the parties stipulated to remand the matter for further proceedings and Chief Judge Elizabeth A. Wolford approved the stipulation. John M. v. Comm'r, No. 6:21-CV-6031-EAW, Docket No. 10 (Apr. 1, 2022).

5. On May 29, 2022, the Appeals Council vacated and remanded this case for the ALJ to evaluate the opinions of J. Poss, M.D., and consultative examiners Harbinder Toor, M.D., and Todd Deneen, Psy.D., consider Plaintiff's maximum residual functional capacity, and provide rationale with specific references to evidence of record in support of assessed limitations. (R. at 1296-99.)

6. On this remand, Plaintiff alleged a closed period of disability from his 55th birthday on February 1, 2019, when he became an individual of advanced age through March 1, 2021, when he returned to work. (R. at 1222, 1224, 1236, 1251-56, 1406.) See 20 C.F.R. §§ 404.1563(e), 416.963(e).

7. ALJ Brian Kane conducted the remand telephonic conference on December 8, 2022, due to the COVID-19 pandemic, where Plaintiff represented by a non-attorney representative and Vocational Expert Tim Andenmatten appeared and testified. (R. at 1245-70.) On January 5, 2023, the ALJ rendered his pending decision denying

---

² Citations to the underlying administrative record are designated as "R."

Plaintiff's claim for benefits. (R. at 1222.) On August 4, 2023, the Appeals Council declined review. (R. at 1213.)

8. After this decision, Plaintiff filed the instant action challenging the Commissioner's final decision.[3] (Docket No. 1.)

9. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7, 15.) Plaintiff filed a Response on May 28, 2024. (Docket No. 16.) This Court then took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be granted, Defendant's Motion will be denied, and this matter will be remanded for further proceedings.

10. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's January 5, 2023, decision became the Commissioner's final decision on this matter when the Appeals Council declined review.

11. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

12. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

13. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

4

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

14.   Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step. See Yuckert, 482 U.S. at 146 n.5. The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

15.   The ALJ here analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity from February 1, 2019, through March 1, 2021, the alleged closed period of disability. (R. at 1224, 1236.) At Step Two, the ALJ found that Plaintiff has the following severe impairments: liver disease and audiologic hearing loss. (R. at 1225.)

16. At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1226.)

17. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except Plaintiff was able to frequently stoop, crouch, and crawl while limited to working in environments of moderate noise. (R. at 1227.) Incidentally, this was the same RFC found by the ALJ in the original decision. (R. at 18, 1280.)

18. At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work while not engaging in a substantial gainful activity during the alleged closed period. (R. at 1225, 1236.) At Step Five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 1237.) Given the additional limitations to performance of the full range of medium work, the ALJ posed hypotheticals to the Vocational Expert of a claimant like Plaintiff in his age, education, work experience, and RFC. The Expert answered that this hypothetical claimant could perform such representative occupations as home attendant, window cleaner, and bagger. Accordingly, the ALJ found that Plaintiff was not disabled. (R. at 1237-38.)

19. Plaintiff now argues that the RFC was unsupported by substantial evidence and that the ALJ improperly evaluated the medical opinions in the record. First, Plaintiff contends that the ALJ failed to evaluate the opinion of John Buckley, M.D., for treatment of his liver. Second, despite the remand for consideration of the opinion evidence, Plaintiff argues that the ALJ misread the opinions of Drs. Poss, Toor, and Deneen and rejected

the limitations recognized by these professionals. For the reasons that follow, this Court finds that, despite appropriately assessing most medical opinions in this record, the ALJ did not evaluate Dr. Deneen's psychological opinion.

20. For disability applications filed after March 27, 2017, Social Security regulations require that the agency consider the persuasiveness of medical opinions while not deferring or giving any specific evidentiary weight to any medical opinion. See, e.g., 20 C.F.R. §§ 404.1520c(a), 416.920c (a). The Social Security Administration considers the supportability and consistency of the opinions as the most important factors in assessing their persuasiveness. Id. §§ 404.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2). The ALJ must explain their approach with respect to supportability and consistency when considering a medical opinion. Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)). The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion would be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more relevant the objective medical evidence and supporting explanations presented by the medical source in support of their opinion, the more persuasive that medical opinion would be. Id. §§ 404.1520c(c)(1), 416.920c(c)(1).

21. First, on February 13, 2018, Dr. Buckley concluded that Plaintiff was totally and permanently disabled. (R. at 1120.) On February 28, 2018, Dr. Buckley examined Plaintiff for an employability assessment and diagnosed progressive liver dysfunction with symptoms of weakness, fatigue, and memory deficits. (R. at 406.) That day Dr. Buckley

7

opined that Plaintiff was totally disabled from cirrhosis of liver and was very limited in walking, standing, sitting, pushing, pulling, bending, carrying and lifting.  (R. at 406, 408.)

22. Dr. Buckley also diagnosed Plaintiff with depression and anxiety with a history of alcoholism.  He found that Plaintiff had episodes that frequently led to loss of jobs or failure to complete education or training and that Plaintiff's behavior interfered with his activities of daily living.  Dr. Buckley opined that Plaintiff was very limited in following instructions, performing simple and complex tasks, maintaining attention and concentration for rote tasks, maintaining basic standards of hygiene and grooming, and performing low stress and simple tasks, concluding that Plaintiff was permanently disabled because of his liver condition and unacknowledged overuse of alcohol.  (R. at 407, 410-13.)

23. Dr. Buckley repeated on August 6, 2018, and February 11, 2019, that Plaintiff was totally disabled due to chronic liver disease.  (R. at 397, 1121-22; see R. at 1234.)  Meanwhile on August 24, 2018, Dr. Buckley performed an esophagogastroduodenoscopy (or "EGD") with biopsy and band ligation.  (R. at 395.)  On September 20, 2018, he reported that Plaintiff complained of weakness, abdominal distension, cirrhosis, and being too weak to work.  (R. at 414.)  The doctor again opined that Plaintiff was permanently disabled due to advanced cirrhosis.  (R. at 414-17.)  Dr. Buckley found that Plaintiff's mental status was normal and not an issue for his disability.  (R. at 415-16.)

24. On February 7, 2019, however, Dr. Buckley conducted a follow-up examination of Plaintiff and noted that his cirrhosis was stable, that he felt well and had

gained weight, but found that Plaintiff was still unable to work due to weakness from cirrhosis. (R. at 1094; see also R. at 1231, 1234.)

25. On July 22, 2019, Dr. Buckley rendered a medical source opinion diagnosing Plaintiff with cirrhosis and encephalopathy[4] and observing that he also had poor memory and concentration with fair prognosis. (R. at 1123.) Dr. Buckley found that Plaintiff would constantly experience pain or other symptoms that would interfere with his attention and concentration to perform simple tasks, and that he was too weak and fatigued to sustain employment and lacked concentration to work. (R. at 1123-24.) Dr. Buckley opined that Plaintiff could lift less than 10 pounds occasionally, but never twist, stoop, bend, crouch, squat, climb ladders or stairs. (Id.) Dr. Buckley then opined that Plaintiff could sit, stand, and walk less than two hours in a workday and be absent more than four days per month due to his impairments. (R. at 1124.)

26. On March 10, 2020, Dr. Buckley examined Plaintiff again and found that he presented with an ongoing sense of fatigue but without unintentional weight loss and that his cirrhosis being stable. Dr. Buckley attributed this fatigue to deconditioning rather than symptoms of cirrhosis. (R. at 1423.)

27. The ALJ reviewing Dr. Buckley's treatment record, however, found these opinions unpersuasive because of two inconsistencies. First, the ALJ observed that the doctor's mental functioning findings of Plaintiff from February and September 2018 were inconsistent. Dr. Buckley found that Plaintiff was very limited in mental functioning in February but denying any such limitation in September. (R. at 1234; compare R. at 406-

---

[4] Encephalopathy is any dysfunction of the brain. Clayton L. Thomas, ed., Taber's Cyclopedic Medical Dictionary 586 (16th ill. ed. 1989).

07, 411-12 with R. at 414-17.)  Second, the ALJ found that Dr. Buckley's physical assessments also were inconsistent with his treatment notes, specifically Dr. Buckley's February 7, 2019, total disability opinion, which did not discuss functional limitations or any weakness on examination.  (R. at 1234-35.)

28.     This Court finds that the ALJ appropriately assessed Dr. Buckley's opinions for their support and consistency. As for their supportability, Plaintiff made statements during examinations within the closed period that he was doing well and had gained weight without complaining of weakness, all symptoms of cirrhosis.  Plaintiff's examination statements, however, are inconsistent with Dr. Buckley's opinions finding cirrhosis-based weakness.  (See R. at 1094, 1123-24.)  Furthermore, the ALJ also discussed the failure of these opinions to enumerate any functional limitations from his cirrhosis.  (R. at 1234.)

29.     The ALJ also noted Plaintiff's examination on September 10, 2020, by Marie Ayorkor Laryea, M.D., of the University of Rochester Medical Center, demonstrating that he was feeling well without having any signs or symptoms of decompensated liver disease, including fatigue, ascites,[5] encephalopathy, jaundice, easy bruising or prolonged bleeding.  (R. at 1233; see R. at 1511-12, 1514.)  Other examining doctors also found that Plaintiff lacked deleterious symptoms stemming from his cirrhosis, reported inactive cirrhosis, and found that he had normal abdominal examinations, weight gain, and no longer had issues with ascites so long as he remained abstinent.  (R. at 1087-88, 1178-79, 1199-1201; see R. at 1234-35.)

---

[5] Ascites is accumulation of serous fluid in the peritoneal cavity.  Taber's Cyclopedic Medical Dictionary, supra, at 149.

30.     Moreover, the ALJ cited Plaintiff's urology examination by Thomas Frye, D.O., on June 17, 2020, at the University of Rochester Medical Center where Plaintiff denied any fatigue or weight loss.  (R. at 1233; see R. at 1458.)  On January 20, 2021, Plaintiff had a follow up urology appointment with Dr. Frye and Amanda Buckner, PA, to whom he denied any weight change or fatigue.  (R. at 1539; see also R. at 1234.)

31.     During this closed period Plaintiff's Model for End-Stage Liver Disease (or "MELD") scores also showed improvement of his liver condition.[6]  On admission to the University of Rochester Medical Center on March 21, 2018, Plaintiff had a MELD score of 21.  (R. at 825.)  On January 24, 2019, Plaintiff's MELD score reduced to 11.  (R. at 1088.)  During Plaintiff's closed period, on May 16, 2019, his MELD score reduced to 10 and stabilized at that score through September 10, 2020.  (R. at 1199, 1442, 1514-15.)  With a MELD score of 10 on May 2019, Dr. Laryea found that it was too early to consider liver transplantation for Plaintiff.  (R. at 1199.)

32.     This Court concludes that the above medical record shows the absence of support during the closed period for the more severe limitations identified by Dr. Buckley due to Plaintiff's cirrhosis.

33.     Regarding the consistency of these opinions, this Court finds inconsistency between Dr. Buckley's opinion in February 2019 where Plaintiff said that he felt well without any intervening event for any pain and his July 2019 opinion where the doctor

---

[6] MELD is a calculated formula used to assign priority for most adult liver transplant candidates based on their medical urgency as reported as score ranges from 6 to 40 where the higher the score the greater the 3-month mortality related to liver disease. Organ Procurement & Transplantation Network, U.S. Department of Health and Human Services, Health Resources & Services Admin., https://optn.transplant.hrsa.gov/data/allocation-calculators/meld-calculator/#:-:text= The Model for End-Stage.(mg/dL) (last visited Oct. 31, 2024); Viral Hepatitis and Liver Disease, "What Is the MELD Score and When Do We Use It?" U.S. Dep't of Veterans Affairs, https://www.hepatitis.va.gov/cirrhosis/background/cirrhosis-meld-score.asp (last visited Oct. 31, 2024).

11

found that Plaintiff suffered constant pain.  (Compare R. at 1094 with R. at 1123-24.)  This Court also notes that the ALJ properly found the mental health inconsistencies in Dr. Buckley findings of Plaintiff having normal mental status on September 2018 while also diagnosing him with depression and alcoholism that day.  (R. at 1234.)

34. Accordingly, this Court concludes that the ALJ appropriately accessed the supportability and consistency of Dr. Buckley's opinions.  Plaintiff's Motion for Judgment on the Pleadings on this ground therefore is denied.

35. Plaintiff argues that the ALJ erred in interpreting the opinions of Drs. Poss, Toor, and Deneen.

36. On July 16, 2018, state agency Dr. Poss diagnosed Plaintiff with severe cirrhosis following hospitalization in March through April 2018.  Dr. Poss noticed temporary improvement in his condition after treatment and sobriety but its worsening after Plaintiff resumed drinking.  Dr. Poss noted that Plaintiff had no history of physical therapy or use of pain medication.  The doctor opined that Plaintiff could complete 40-hours of work in a competitive environment and could lift 50 pounds occasionally and 25 pounds frequently.  (R. at 63-64, 76-77.)

37. First, the ALJ found Dr. Poss' opinion persuasive because Plaintiff's cirrhosis was treated and stabilized.  (R. at 1235-36.)  Second, the ALJ noted that Plaintiff was able to return to medium work with frequent stooping, crouching, and crawling, evident from Plaintiff working part-time at a tree service company and going to the gym.  Third, as for Plaintiff's left shoulder, the ALJ noted from treatment records that at the start of the closed period Plaintiff's shoulder had improved "significantly."  (R. at 1235-36; see R. at 1138-75 (treatment notes from Churchville Physical Therapy, Dec. 12, 2018, through

Sept. 19, 2019), 1187.)  The ALJ then rested on the findings of Plaintiff's full strength and normal gait in examinations, concluding that he could perform medium work.  (R. at 1236.)

38.   Plaintiff, however, faults the ALJ's reliance on this opinion because it predated the closed period and Dr. Poss had not reviewed subsequent records of Plaintiff's left shoulder impairment first diagnosed on October 24, 2018.  This staleness objection would also apply to the contemporaneous opinions of Drs. Toor and Deneen also rendered in July 2, 2018, and before Dr. Poss' opinion.[7]  Each of these opinions were rendered months before the start of the closed period on February 1, 2019.  While predating this closed period, this Court concludes that these opinions are not stale.

39.   Stale and conclusory medical opinions based on incomplete medical record may not be substantial evidence to support the ALJ's finding.  Carney v. Berryhill, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) (quoting Camille v. Colvin, 104 F. Supp.3d 329, 343-44 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir. 2016)).  "A medical opinion may be stale if it does not account for the claimant's deteriorating condition."  Carney, 2017 WL 2021529, at *6 (citations omitted); see Girolamo v. Colvin, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded great weight to medical opinion rendered before claimant's surgery).

40.   An opinion, however, does not become stale merely because of its age.  The putative stale opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.  Lesanti v. Comm'r, 436 F. Supp. 3d 639, 646

---

[7] Dr. Poss cited Dr. Toor's examination in the opinions.  (R. at 64, 77.)

(W.D.N.Y. 2020); see Oliver v. Comm'r, No. 20-cv-662-FPG, 2020 WL 3073342, at *5 (W.D.N.Y. June 10, 2020).

41.   For any of these opinions to be deemed stale the subsequent evidence must show the worsening of claimant's condition after the opinion. See Oliver, 2020 WL 3073342, at *5. Plaintiff's liver and left shoulder after July 2018, however, did not worsened. Looking at Dr. Poss' opinion, this Court finds that opinion is consistent with Plaintiff's subsequent examination record.

42.   Plaintiff's argument focused on his left shoulder after Dr. Poss rendered the opinion. His treatment records for that period, however, demonstrate that his left shoulder impairment remained stable. Plaintiff began therapy with Churchville Physical Therapy on December 12, 2018, for pain associated with raising his left arm above shoulder height, heavy lifting, and difficulty reaching behind his back. (R. at 1173.) After numerous physical therapy sessions, on September 19, 2019, Mark Chase, PTA, of Churchville Physical Therapy reported Plaintiff's discharge from their care because his left shoulder soreness was resolved with physical therapy. (R. at 1138; see R. at 1236.)

43.   Meanwhile, on March 21, 2019, Stephen Goon, NP, of University of Rochester Medical Center, examined Plaintiff for reevaluation of left shoulder pain and impingement noting that Plaintiff then reported good progress overall, no pain, and good range of motion. While stating that he found extension somewhat challenging, Plaintiff reported continuing physical therapy and exercising at the gym. NP Goon found no acute injuries and denied that Plaintiff required pain medication. (R. at 1187-88; see R. at 1236.)

44.   Thus, this Court concludes that Dr. Poss' opinion is consistent with subsequent medical record, is not impermissibly stale, and that the ALJ appropriately

considered that opinion.  Thus, Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

45. Dr. Toor conducted a consultative examination of Plaintiff on July 2, 2018, and found that he had moderate limitations standing, walking, sitting, bending, lifting, and carrying.  Dr. Toor noted that Plaintiff suffered from pain, fatigue, and tiredness because of liver disease that could interfere with his routine.  (R. at 389.)

46. The ALJ found Dr. Toor's opinion not fully persuasive because it was vague and preceded the closed period at issue.  The ALJ nevertheless found that the opinion was somewhat consistent with the doctor's examination findings and lumbar x rays of Plaintiff.  The ALJ also noted that after Dr. Toor's examination Plaintiff suffered severe symptoms and limitations from cirrhosis, low back, and left shoulder impairments, but he still was able to perform daily activities and could work at medium level of exertion.  (R. at 1230.)

47. Plaintiff now argues that the ALJ failed to explain the consistency of Dr. Toor's opinion with the evidence or how it was unsupported by Dr. Toor's objective findings.  Plaintiff objects to the ALJ's comparison of Dr. Toor's moderate limitation with Dr. Deneen's mild limitation.

48. This Court disagrees.  The ALJ has explained the consistency of Dr. Toor's opinion with the medical evidence and examination findings therein.  (R. at 1230.)  The ALJ countered the vagueness of this opinion with Dr. Toor's examination findings and Plaintiff's daily activities.  (Id.)

49. Plaintiff compares limitation findings for physical or mental health from Drs. Toor and Deneen arguing that the ALJ should have treated them the same where

15

these doctors did not address the same conditions. This Court concludes that the ALJ could adopt distinct limitation findings from these doctors based on their specialty.

50. Courts in this Circuit have concluded that an RFC for medium work is consistent with mild to moderate limitations. E.g., Cain S. v. Comm'r, No. 1:20-cv-1513 (WBC), 2022 WL 17252414, at *4 (W.D.N.Y. Nov. 28, 2022) (citing cases). Findings here that Plaintiff has moderate physical limitations and mild psychological limitations may be consistent with performing medium work. Thus, Plaintiff's Motion for Judgment on the Pleadings on consideration of Dr. Toor's opinion is denied.

51. Finally, the ALJ considered Dr. Deneen's psychological evaluation of Plaintiff. On July 2, 2018, Dr. Deneen noted that Plaintiff said he had no history of inpatient psychiatric care or outpatient mental health therapy while having a history of anxiety and depression. (R. at 380.) He concluded that Plaintiff had no limitations in his understanding and applying simple directions and instructions; interacting adequately with supervisors, coworkers, and the public; sustaining an ordinary routine and regular attendance at work; and maintaining personal hygiene and appropriate attire. Dr. Deneen found that Plaintiff had mild limitations in understanding complex directions; using reason and judgment to make work-related decisions; sustaining concentration and performing tasks at a consistent pace; regulating emotions, controlling behavior, and maintaining well-being; having awareness of normal hazards and taking appropriate precautions. Dr. Deneen found that these difficulties were caused by cognitive deficits and mood symptoms. The doctor found that the results of this examination appeared to be consistent with substance abuse and cognitive problems, but noting that these results did

not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. (R. at 383.)

52. The ALJ found Dr. Deneen's opinion persuasive despite being rendered before the closed period of disability because that opinion generally matched examination findings and subsequent records which showed only mild psychiatric or cognitive deficits. (R. at 1229-30.)

53. Plaintiff argues that the ALJ's discussion of this opinion was not changed from original decision on remand. (Compare R. at 20, 1282, with R. at 1229-30.) He also contends that the ALJ cited generally to 310 pages of the record without specifically establishing how it showed consistency or support for that opinion. (R. at 1230, citing R. at 1187-1212, 1423-1706.)

54. This Court notes that this record cited Plaintiff's medical care with slight references as to his psychological condition. (E.g., R. at 1187, 1701 (noting past anxiety diagnosis).) Dr. Deneen noted Plaintiff's cirrhosis diagnosis but the doctor's medical source statement focused on Plaintiff's psychological limitations. (R. at 383.) The ALJ specifically cited as examples evidence from treating sources at the University of Rochester Medical Center from March 2019 through August 2022, who discussed treatment of Plaintiff's shoulder and liver but not his psychological treatment. (E.g., R. at 1187-1212, 1423-1706; see R. at 1230.) This Court thus was required to conduct an inappropriate scouring of this cited 310 pages to find references to Plaintiff's psychological treatment. See Angela G. v. Comm'r, No. 19-CV-6864-NR, 2020 WL 7706568, at *6 & n.4 (W.D.N.Y. Dec. 29, 2020). The only psychological discussion in this record related Plaintiff's social history which included alcoholism or doing well with

paroxetine for his anxiety.  (E.g., R. at 1188, 1196, 1204-05, 1701.)  This is insufficient consideration of Plaintiff's mental health care to weigh the consistency and sufficiency of Dr. Deneen's opinion.  See Loni S. v. Comm'r, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *16, n.11 (N.D.N.Y. June 27, 2023).

55.   Furthermore, the ALJ reiterated the original assessment of Dr. Deneen's opinion rendered on March 5, 2020, when the ALJ initially rested on the absence of mental health treatment in finding that opinion persuasive.  (R. at 20, 1229-30, 1282.)  On remand, the ALJ found this opinion persuasive because the subsequent record did not suggest more than mild psychiatric or cognitive deficits.  (R. at 1230.)  This Court finds that it is unclear what the basis for the ALJ's latter assessment of Dr. Deneen's opinion.

56.   This Court holds that the ALJ erred in finding psychological abnormalities without evidence of treatment or the lack thereof to support that finding.  This Court now finds that there is no substantial evidence for the limitations opined by Dr. Deneen.

57.   The Appeals Council's reason for remand of this matter was for the ALJ to evaluate Dr. Deneen's opinion for its supportability with citations to the doctor's findings. (R. at 1298-99.)  By merely repeating the initial findings and citing to physical (rather than psychological) evidence, the ALJ failed to address the Appeals Council's mandate. Another remand is warranted.  Therefore, Plaintiff's Motion for Judgment on the Pleadings as to Dr. Deneen's opinion is granted.

58.   Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds that the ALJ appropriately considered the opinions of Drs. Buckley, Poss, and Toor for Plaintiff's physical limitations.  The ALJ, however, did not provide substantial support for the assessment of Dr. Deneen's opinion regarding

Plaintiff's psychological limitations. This Court remands this case and the ALJ shall consider Dr. Deneen's opinion with Plaintiff's psychological treatment record and furnishing clear citations therein to support the assessment of that opinion.

    IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

    FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

    FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

    FURTHER, that the Clerk of Court is directed to CLOSE this case.

    SO ORDERED.


Dated:    February 5, 2025
            Buffalo, New York


                                                s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge